**Keith NORMAN, Plaintiff,**

v.

**SUNDANCE SPAS, INC. and Voyager Computer Corp., Defendants.**

**Civ. A. No. C93–0183–BG(H).**

United States District Court,
W.D. Kentucky,
at Bowling Green.

Feb. 15, 1994.

Charles E. English, Jr., English, Lucas, Priest & Owsley, Bowling Green, KY, for plaintiff.

Max B. Harlin, III, Harlin & Parker, Bowling Green, KY, for Sundance Spas, Inc.

Henry E. Kinser, Wyatt, Tarrant & Combs, Lexington, KY, for Voyager Computer Corp.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Plaintiff, Keith Norman, moves to remand this product liability action to state court. Defendants, Sundance Spas, Inc. and Voyager Computer Corporation, affected removal based upon diversity of citizenship after the state court dismissed the only non-diverse defendant. Plaintiff argues two grounds for remand: 1) Defendants removed outside the one-year limitation period imposed by 28 U.S.C. § 1446(b); or 2) Plaintiff did not voluntarily dismiss the non-diverse defendant, a jurisdictional element of removal. After careful consideration of counsels' excellent arguments in this unique case, the Court concludes that Plaintiff is entitled to remand on the basis of the one-year limitation and thus does not reach the voluntariness issue.

### I.

Plaintiff sustained burns to his right leg from the use of a spa equipped with a digital temperature display, which, Plaintiff alleges, indicated a water temperature of 95 degrees fahrenheit, when in fact the water had reached scalding temperatures. On September 11, 1992, Plaintiff brought this action in state court against the spa manufacturer, Defendant Sundance, as well as the local retailer and other electronic component manufacturers, under theories of negligence, warranty, and strict liability. One month later on October 19, 1992, Plaintiff amended the complaint to add several defendants, including Defendant Voyager.[1] All Defendants, at that time, were citizens of California with the exception of the local retailer, a citizen of Kentucky.

Because Plaintiff is also a Kentucky citizen, complete diversity of citizenship did not exist until September 20, 1993, the date the state court dismissed the local retailer and all other Defendants except Sundance and Voyager on summary judgment. The state court dismissed several manufacturers once it became apparent that none of their products were implicated in Plaintiff's cause of action. Dismissal of the local retailer, the state court reasoned, was warranted since Plaintiff's expert witness testified that the local retailer's conduct did not cause or contribute to the accident.[2] The remaining Defendants, Sundance and Voyager, filed notice of removal on October 12, 1993, based upon diversity jurisdiction, 28 U.S.C. § 1332. While Defendants petitioned for removal a full thirteen months after Plaintiff filed the original complaint, the removal occurred only about eleven months after Defendant Voyager became a party to this case and, arguably therefore, within the one-year limitation.

### II.

A defendant may remove a civil action brought in state court to federal court generally where federal jurisdiction is apparent from the complaint. 28 U.S.C. §§ 1441, 1446 (1973 Supp.1993) An action is also later removable, under limited circumstances, if federal jurisdiction later arises as a consequence of an amendment to the complaint where the plaintiff raises a federal question or drops non-diverse or resident defendants.[3]

---

1. The defendants added by the amendment were not substituted for fictitious names, which at least in this case is inconsequential.

2. The Kentucky Product Liability Act imposes strict liability upon a retailer of a defective, unreasonably dangerous product only if the retailer knew or should have known of the product's defective condition. KRS 411.340 (Michie 1992).

3. Even if there is complete diversity of citizenship among opposing parties, the presence of a defendant who is a citizen of the state in which the federal court sits will defeat removal jurisdiction. 28 U.S.C. § 1441(b) (1973).

*See* § 1446(b). In diversity cases, however, later removal is permissible only if complete diversity is created by voluntary dismissal of a non-diverse defendant. *E.g., Saylor v. General Motors Corp.,* 416 F.Supp. 1173 (E.D.Ky.1976). Even then, a defendant may not remove a diversity case more than one year after commencement of the action. § 1446(b).

■ It is an issue of first impression whether the presence of a defendant who petitions for removal within one year of being joined in the lawsuit but beyond one year of the original complaint makes a case removable. After construing the language, history and purpose of the removal statute, the Court concludes that Congress intended to bar removal of diversity cases after one year from the date of the initial pleading. Because this action "commenced" on the date Plaintiff filed the original complaint, Defendants' petition for removal fell outside the one-year limitation.

### III.

■ To determine whether the date of joinder or the date of the initial pleading triggers the one-year cap on removal, the Court must construe the phrase "commencement of the action." § 1446(b).[4] It is not too elementary to suggest that the source of this inquiry is federal law. Although federal courts may construe federal statutes by reference to state law, e.g. *Robinson v. J.F. Cleckley & Co., Inc.,* 751 F.Supp. 100, 104 (D.S.C.1990), construing the terms of a federal statute is a federal issue, and state law definitions are not controlling. *Chicago Rock Island & Pac. R.R. Co. v. Stude,* 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317 (1954);

*Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 104, 61 S.Ct. 868, 870, 85 L.Ed. 1214 (1941).[5]

■ The Federal Rules of Civil Procedure provide that "[a] civil action is commenced by filing a complaint with the court." Fed. R.Civ.P. 3 (1993, adopted in 1937). Indeed, this definition is consistent with common acceptance of the meaning of "commencement of the action." [6] Black's Law Dictionary 243 (5th ed. 1979) (stating that the federal definition is representative of most jurisdictions). One long standing canon of statutory construction is that Congress presumably intended language to have no more than its usual connotations. *See Cohens v. Virginia,* 19 U.S. (6 Wheat) 264, 408, 5 L.Ed. 257 (1821). It follows, therefore, that Congress intended the initial pleading to trigger the one-year cap on removal.

This result is criticized because it defines "commencement" from the plaintiff's perspective as a means for determining the time limitation of *actions* and fails to appreciate a later-joined defendant's perspective for triggering a time limitation of *removal.* While it is true that "commencement of the action" could have a different meaning for a defendant than for a plaintiff, Congress did not make such a distinction and this Court finds no reason to write one into the law. The "plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1081, 103 L.Ed.2d 290 (1989). Although the instant case is unique,

**4.** 28 U.S.C. § 1446(b) provides in pertinent part:
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendants, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

**5.** *But see* 28 U.S.C. § 1446(b) Commentary (1993 Supp.) ("The result in a given case is made to

depend on the procedural variations—and perhaps the procedural eccentricities—of the particular state's practice.").

**6.** The word "action" of this phrase appears at the end of a paragraph that consistently uses the term "case." Ordinarily, the juxtaposition of "action" and "case" might lead to the inquiry whether Congress intended the terms to have distinct interpretations. Given the established usage of the legalese "commencement of the action," however, any inference of a narrower construction of the term "action" is misplaced.

it is not the "rare" case producing a result contrary to the framer's intent. *Id.*

## IV.

■ While confident of its conclusion, the Court recognizes that interpreting the "plain" meaning of the removal statutes is subject to legitimate differences of opinion. Only after resolving three other contentions does the Court feel comfortable concluding that the plain and proper construction of the phrase "commencement of the action" means the date of the initial pleading. First, the alternative construction of a commencement-joinder date produces results at odds with the statutory scheme of removal; second, the consequences of applying an initial-pleading date is consistent with the intent of the removal statute; and third, federal courts are well-equipped to remedy any attempted abuse of the rule. In each case, a fair argument could be made to the contrary, but in no instance are those arguments sufficiently compelling to require departure from the plain language and clear policy of the removal statutes.

### A.

An alternative construction of the phrase "commencement of the action" would allow a later-joined defendant to remove an action more than one year after the plaintiff initiated the lawsuit, by bifurcating "commencement" of an action to create a commencement date for each defendant, i.e., the date of joinder.[7] The premise of this analysis hinges on the proposition that an action is the sum of its parts, i.e., separable claims and defendants, and that, accordingly, one defendant should not be prejudiced by the joinder of another defendant.[8]

This construction, however, is fundamentally at odds with the statutory scheme of removal. For purposes of the removal statute, the proper interpretation of the phrase "commencement of the action" turns on the proposition that *cases* are removable, not separate claims and not individual defendants. Although this premise appears simplistic, it is fundamental. The separable controversy doctrine, a creature of removal jurisprudence, reveals a legislative disfavor for extending the purely statutory right of removal to a defendant whose case would be removable but for the joinder of other non-removable "controversies," a term taken to mean claims involving other parties. See Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3724 (1985) (detailing the history of § 1441(c), and the separable controversy doctrine.)

Congress enacted § 1441(c), as amended in 1948, ostensibly for the purpose of extending removal jurisdiction over an entire case where a "separate and independent claim or cause of action, which would be removable if sued upon alone," was joined with otherwise non-removable claims.[9] In a seminal case, the Supreme Court strictly construed this statute to permit removal over "an entire case" involving two separate controversies,

7. This approach would inevitably windfall those initially-named defendants whose untimely removal would be derivatively sustained by the timely removal of indispensable, later-joined defendants. Were this one-year limitation jurisdictional as some district courts have held, the presence of an indispensable defendant partied in the action for more than one year at the time of removal would defeat removal jurisdiction. See *Brock v. Syntex Laboratories, Inc.,* 791 F.Supp. 721 (E.D.Tenn.1992), summarily affirmed, 7 F.3d 232 (6th Cir.1993). Section 1446(b), however, does not purport to limit the power of federal courts on removal. *Barnes v. Westinghouse Electric Corp.,* 962 F.2d 513 (5th Cir.1992) (holding § 1446(b) is not jurisdictional in nature.) Section 1446, instead, sets forth the "procedure for removal" and is, thus, subject to waiver and estoppel. Removal jurisdiction is instead pre-

scribed in § 1441. See *M'Culloch v. Maryland,* 17 U.S. [4 Wheat] 316, 419–20, 4 L.Ed. 579 (1819) (reasoning that the placement of language within a statute supports an inference of legislative intent.). The Court, therefore, is of the opinion that a jurisdictional limitation is not the proper basis for disposing of the bifurcated approach setting a joinder-commencement date.

8. The Kentucky rule of civil procedure may support this approach by defining "commencement of an action" as the filing of a complaint and the issuance of a summons. KRS 413.250 (Michie 1982).

9. Although § 1441(c) applied both to diversity and federal question cases, the 1990 amendment eliminated the removal of diversity cases under this section.

one removable and the other non-removable, only where the two actions arose from different transactions or occurrences. *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). The Court reasoned that where there is a single wrong to plaintiff for which there is but one recovery, whether several parties may be individually or severally liable under multiple theories of relief, there is no "separate and independent" cause of action. *Id.,* 341 U.S. at 14, 71 S.Ct. at 540.

On the basis of the statute's plain language, therefore, the *Finn* Court declined to extend the right to remove to a defendant who could have removed a diversity action but for the presence of other non-removable controversies involving other defendants arising from the same transaction. The later-joined Defendant in this case stands in the same footing. Plaintiff, here, suffered one wrong, although more than one party may be legally responsible. The liability of each Defendant, if any, arises from the same transaction and occurrence, i.e., personal injury from the use of a spa, and their joinder is a necessary and efficient means for consistent adjudication, particularly the strict liability claim where fault is a non-dispositive issue. Because this case therefore involves but one "cause of action," creating a separate commencement date for the later-joined Defendant would be a construction inconsistent with the removal statutory scheme.[10]

### B.

At a conference with counsel, the Court explored the consequences of plainly construing § 1446(b) as barring the removal of actions one year after the filing of the original complaint rather than on the date of the amended complaint joining Voyager. The Court's chief concern is that plaintiffs may delay the removability of a case beyond the one-year limitation by manipulating liberal joinder and amendment rules in order to disadvantage defendants who have no control over when they are partied in a case. The Court does not believe, however, that later-joined defendants are *unfairly* disadvantaged under this interpretation of § 1446(b) nor that the application of this rule contravenes the intent of the removal statute.[11]

A procedural imbalance of power between opposing parties is a legitimate dynamic of any case and it alone does not warrant an alternative construction of § 1446(b). Plaintiffs have many elections in a case, including forum, parties, claims, federal or non-federal in nature to the natural disadvantage of defendants. Conversely, defendants right to remove an action to federal court, although established as early as the Judiciary Act of 1789, is purely statutory and limited by the will of Congress. Indeed, the 1988 amendment to § 1446(b) abridging defendants' right to remove diversity cases beyond one year represents a deliberate legislative trend to curtail federal jurisdiction over suits between litigants of diverse citizenship. If the Court construed § 1446(b) as permitting removal at any time as long as within one year of the latest party-joinder, then a case could conceivably be removable years after its commencement, tempered only by plaintiffs' inability to join a defendant outside the limitation of actions. This result not only stretches the statutory language to a textually unrecognizable extreme but also subverts the very rationale of the one-year limitation: to prevent the disruption of removal where a state court has made substantial progress in a case. H.R.Rep. No. 889, 100th Cong., 2d Sess. 72 (1988), U.S.Code Cong. & Admin.News 1988, pp. 5982, 6032.

The facts of this case demonstrate that limiting the removal of actions within one year of the original complaint would promote judicial economy. The parties had conducted

---

10. The only situation in which construing 1446(b) as creating a separate commencement date for later-joined defendants would be consistent with the separable controversy doctrine is where a plaintiff has joined two causes of action involving separate defendants. Torturing the plain language of the statute to conform with such a rare occurrence, however, is not only unwarranted but also unnecessary given the availability of severance under Rule 21 in order to preserve subject matter jurisdiction, see *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).

11. Also see discussion in Section IV(C) concerning adequacy of Court remedies to deter abuse of the rule.

significant discovery and were within three months of a trial date. Had Plaintiff joined Voyager initially rather than one month later in the amended complaint, Defendants' petition to remove would have clearly fallen outside the one-year limitation. There is simply no unfairness in reaching the same result that would follow had Plaintiff named all defendants in the original complaint. Defendant Voyager argues, however, that with a full year to remove, a later-joined defendant would be better able to expedite the case to create complete diversity within one year. Perhaps this is so in the unusual case. However, in every case, all time limitations in one sense arbitrarily cut short the rights of litigants. Allowing a later-joined defendant a full year to remove would create a far more troublesome consequence of disrupting cases where a state court has made substantial progress. In light of the statute's objective, therefore, defendants are not unfairly disadvantaged by the Court's interpretation.

### C.

.Given plaintiffs' procedural advantage to pursue a non-federal case, there remains a potential that plaintiffs may abuse that advantage and maneuver party-alignment in diversity cases to prevent removal within the first year. This *could* promote forum-shopping, a result demonstrably at odds with legislative intent. For example, if the original complaint triggers the one-year limitation notwithstanding the presence of later-joined defendants, plaintiffs are in a position to join diverse defendants after one year and then drop non-diverse and resident defendants so that diversity jurisdiction does not arise until well after the one-year limitation.

This type of forum-shopping, however, is already subject to more effective cures. The federal courts are well-equipped to remedy fraudulent conduct which unfairly deprives defendants of their right to remove. Federal courts have always exercised removal jurisdiction over a case where a plaintiff has fraudulently joined a non-diverse defendant.

*E.g., Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921).

Just as federal courts apply the fraudulent joinder doctrine to remedy a defendant's inability to remove at the outset of litigation, federal courts may also exercise removal jurisdiction over a case removed outside the one-year limitation upon proof that plaintiffs fraudulently delayed joining a defendant to defeat removal. Removing defendants could demonstrate plaintiffs' bad faith upon a showing that plaintiff knew the identity of a putative, diverse defendant yet without good cause failed to join that defendant until after the one-year cap on removal. The limited potential that plaintiffs may so cleverly maneuver and abuse their procedural elections, therefore, does not warrant an alternative construction of § 1446(b) at odds with the plain meaning and intent of the statute.

### V.

Because Defendants petitioned for removal more than one year after the commencement of the action, Plaintiff is entitled to remand.[12] The Court is entering an order consistent with this memorandum opinion.

### ORDER

This matter is before the Court on motion of Plaintiff, Keith Norman, to remand this product liability action to state court. Defendants, Sundance Spas, Inc. and Voyager Computer Corporation, removed this action on the basis of diversity of citizenship after the state court dismissed the only non-diverse defendant on summary judgment. The Court having read the parties' memoranda, the record and pertinent authority and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the motion of Plaintiff to remand is SUSTAINED and this case is remanded to the Warren Circuit Court.

---

12. The Court spent considerable effort on the voluntariness issue. It is not clear that removal would have been appropriate even had Defendants petitioned within the one-year limitation. Because the one year cap on removal is dispositive, however, the voluntariness issue is moot.